**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACQUELINE HELPERN<br><br>               Plaintiff,<br><br>    v.<br><br>INSURANCE INDUSTRY CHARITABLE<br>FOUNDATION INC.<br><br>               Defendant. | Docket No. 16 Civ. 1423<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Jacqueline Helpern, by and through her attorneys at the Filosa Law Firm, PLLC, as and for her Complaint in this action against Defendant Insurance Industry Charitable Foundation Inc. ("IICF" or "Defendant"), alleges upon personal knowledge and upon information and belief as to other matters as follows:

**PRELIMINARY STATEMENT**

      1.      This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Specifically, Defendant violated the FLSA and NYLL when it misclassified Plaintiff as an exempt employee and, as a result, failed to pay Plaintiff overtime compensation for all hours that she worked in excess of forty (40) in a given workweek because Defendant. Further, Defendant violated the anti-retaliation provisions of the FLSA and NYLL when it terminated Plaintiff's employment because she complained about Defendant's failure to pay overtime compensation.

**PARTIES**

2.  Plaintiff Jacqueline Helpern is a resident of the State of New York and is a former employee of Defendant Insurance Industry Charitable Foundation. At all relevant times, Defendant employed Plaintiff as the Assistant Director for Defendant's Northeast Division. At all times relevant to this matter, Plaintiff met the definition of "employee" under all applicable statutes.

3.  Defendant Insurance Industry Charitable Foundation Inc. is a foreign not-for-profit corporation organized and existing under the laws of the State of California, with its principal place of business located at 1999 Avenue of the Stars, Suite 1100, Los Angeles, CA 90067. At all relevant time, Defendant met the definition of "employer" under all applicable statutes.

**JURISDICTION AND VENUE**

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FSLA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

5.  The Court also has jurisdiction over Plaintiff's claims under state and local law pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff, a citizen of the State of New York, and Defendant, a citizen of the State of California and this action involves a matter in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  Venue is proper in the district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

7. Contemporaneous with the filing of this lawsuit, Plaintiff will forward a copy of this complaint to the Attorney General of the State of New York in accordance with NYLL § 215(2).

## FACTUAL ALLEGATIONS

8. Defendant initially hired Plaintiff in June 2014 to work on a consultant basis and serve as Defendant's Assistant Director for the Northeast Division.

9. At the time, Defendant classified this position as a part-time position and paid Plaintiff on an hourly basis for all work that she performed.

10. In this capacity, Plaintiff was primarily responsible for serving as the assistant to Betsy Myatt, the Executive Director of the Northeast Division, and performing whatever tasks Ms. Myatt assigned to her.

11. At the time that Defendant hired Plaintiff as a consultant, Defendant provided Plaintiff with a job description that outlined the key responsibilities of the Assistant Director position. This job description provided that Plaintiff's primary duty was to "provide support for the Northeast Division Executive Director and the Northeast Division boards" which involved the following job duties:

   a. Providing assistance in the preparation of board meetings materials for New York and Boston boards of directors (no travel required)

   b. Taking board meeting minutes

   c. Participating in committee meetings and teleconferences

   d. Taking and distributing minutes from committee meetings

   e. Assisting with events (annual benefit dinner, softball tournament in Central Park, Women in Insurance Global Conference etc.)

   f. Assisting with constituent relationship management database research and cleanup

  g. Scheduling meetings

  h. Preparing photographs, videos, updates on Northeast activities for distribution on social networks and the IICF website

  i. Assisting Executive Director with contact updates

  j. Assisting the Executive Director with communications and mailings

  k. Providing research related to grant prospects

  l. Scheduling grant site visits and compiling grant committee results

  m. Scheduling meetings with board members, donors, partners

12. Plaintiff continued to work for Defendant as a consultant from June 2014 through August 2014

13. Effective September 1, 2014, Defendant hired Plaintiff as an employee to work on a full-time basis as Defendant's Assistant Director for the Northeast Division.

14. At the time Defendant hired Plaintiff as an employee, Defendant did not provide Plaintiff with a revised job description – though Plaintiff believes that Defendant later revised the above-referenced job description six to eight months later and only removed the part-time designation, Plaintiff does not believe that Defendant changed the above-outlined key responsibilities in this revised job description.

15. Plaintiff's job responsibilities did not change in any material way after she was hired by Defendant to work on a full-time basis, except that the hours that she worked increased substantially and she was now paid on a salary basis.

16. At no time did the work that Plaintiff performed as Assistant Director qualify for any exemption under the FLSA or NYLL.

17. Ms. Myatt and Plaintiff were the only employees of Defendant working in New York, as a result, many of the clerical duties related to the operations of Defendant's New York office and Northeast Division fell to Plaintiff.

18. Even when Ms. Myatt assigned Plaintiff more substantive duties, Ms. Myatt exercised such close supervision that Plaintiff had little autonomy or discretion with respect to how she performed these tasks.

19. Plaintiff was required to keep Ms. Myatt abreast of all the work that she was performing on a daily basis, which she did through the following: (i) a running task list stored in Dropbox, (ii) daily emails about work to be performed and emails from Plaintiff when she completed a task, and (iii) phone calls between Plaintiff and Ms. Myatt in the morning discussing work that Ms. Myatt wanted Plaintiff to perform, including the order in which Plaintiff should complete these tasks, followed up with a phone call towards the end of the day to discuss the tasks that Plaintiff completed that day.

20. Similarly, per Ms. Myatt's instructions, Plaintiff was not permitted to contact other IICF Executive Directors or Board Members, except when told to do so by Ms. Myatt or when Ms. Myatt had approved the communication.

21. As a result of the supervision that Ms. Myatt exercised over Plaintiff's daily work, Plaintiff's primary duty did not involve the exercise of discretion and independent judgment with respect to matters of significance.

22. Over the course of Plaintiff's nearly fourteen months of employment, Plaintiff's job duties did evolve and Plaintiff took on additional job responsibilities, however, at no point during her employment did the work that Plaintiff performed for Defendant qualify for the FLSA's and NYLL's administrative exemption, or any other exemption for that matter.

**FLSA Individual Coverage**

23.     Throughout the course of her employment with Defendant, Plaintiff performed work involving or relating to interstate commerce. By way of example only, in working for Defendant, Plaintiff was often required to: (i) travel across state lines in the course of performing work for Defendant, (ii) produce goods – in Plaintiff's case these goods often consisted of correspondence and other materials – that were sent out of state via the U.S. Postal Service or other common carriers, (iii) make phone calls to persons located in other states, and (iv) handle records of interstate transactions.

24.     As a result, Plaintiff was an employee engaged in commerce, as that term is defined by the FLSA and accompanying U.S. Department of Labor Regulations, during the course of her employment with Defendant and met the requirements for individual coverage under the FLSA.

**NYLL Coverage**

25.     Unlike the FLSA, the NYLL does not require an employer to achieve a certain amount of sales or be engaged in interstate commerce to be covered by the NYLL's overtime requirements.

26.     Defendant is an "employer" for purposes of the NYLL because Defendant is an "individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." *See* N.Y. LAB. LAW § 190(3).

**The Company's Failure to Pay Overtime**

27.     Defendant frequently required Plaintiff to work long hours. For example, Plaintiff worked seventy-two (72) hours in her first week of full-time employment.

6

28.     After Plaintiff's second or third week of employment, Plaintiff asked Ms. Myatt about being paid overtime compensation, but she was told, "we don't pay overtime." A few months later, Plaintiff asked again, but was told something to effect of, "it's not something we do."

29.     Throughout the course of her employment with Defendant, Plaintiff continued to work anywhere from sixty (60) to eighty-five (85) hours per week.

30.     At no time did Defendant pay Plaintiff overtime compensation for working in excess of forty (40) hours in a given workweek.

**Plaintiff's Complaint about Defendant's Failure to Pay Overtime**

31.     On September 24, 2015, Plaintiff wrote a letter to William Ross, Defendant's CEO, and Peter Tucker, Chair of the Defendant's Northeast Division Board of Directors, to address her concerns about Defendant's failure to pay her overtime compensation.

32.     In her letter, Plaintiff estimated that she worked more than 1,000 hours of overtime since the start of her employment for which Defendant had not paid her.

33.     In response, Mr. Ross rejected Plaintiff's concerns and told her that she was properly classified as an exempt employee.

34.     Mr. Ross told Plaintiff: "The fact that you are expected to work hard should come as no surprise, and whether or not a position is exempt has nothing to do with how many hours you may spend performing your duties." However, this position runs counter to the purpose of the FLSA, which was meant to apply financial pressure to "spread employment to avoid the extra wage" and to assure workers "additional pay to compensate them for the burden of a workweek beyond the hours fixed in the [FLSA]." *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577-78 (1942).

**Defendant's Retaliation for Plaintiff's Complaint**

35.     When Plaintiff addressed her concerns to Mr. Ross, Plaintiff engaged in activity protected by both the FLSA and the NYLL.

36.     Less than one month after Plaintiff's protected activity, Defendant terminated Plaintiff's employment citing three purported justifications that were clearly manufactured by Defendant to provide a pretextual reason for Plaintiff's termination.

37.     Specifically, in Plaintiff's termination meeting, Ms. Myatt told Plaintiff that her termination was based on (i) the fact that Plaintiff arrived late to Defendant's Insurance Industry Ping Pong Tournament in Boston on October 1, 2015, which Ms. Myatt claimed "contributed to the mismanagement of the volunteers at the event," (ii) a "breach of security" related to Ms. Myatt's Dropbox account, (iii) Plaintiff's failure to return materials to Sarah Conway, Defendant's Executive Director for the Texas/Southeast Division.

38.     None of these reasons can credibly serve as a legitimate justification for Defendant's termination of Plaintiff's employment.

39.     For example, while Plaintiff arrived five to ten minutes late to the Insurance Industry Ping Pong Tournament event, this was because Plaintiff could not check into her hotel until two hours before the event started. Plaintiff was in constant contact with Ms. Myatt and advised her that she would be running a few minutes late – Ms. Myatt responded with "Thanks for letting me know" – but this had no effect on the event. The fact that Ms. Myatt failed to address this "concern" until Plaintiff's termination meeting – and actually texted Plaintiff following the event to say: "Thanks for all your help, Jackie. It was a very successful event." – belies any claim that this could serve as a legitimate basis for Plaintiff's termination.

40. As for the purported "breach of security," this was nothing more than a misunderstanding on the part of Ms. Myatt. Because Plaintiff shared access to Ms. Myatt's Dropbox account as part of her job duties, she often had to log out of Ms. Myatt's account when Plaintiff wanted to access her personal Dropbox account and then log back into Ms. Myatt's Dropbox account. When Plaintiff did this, Dropbox sent Ms. Myatt an email notifying her that her account had been accessed by another computer or device and Ms. Myatt interpreted this notification as a "security breach." However, given that Plaintiff regularly logged in and out of Ms. Myatt's Dropbox account when performing her job duties, Ms. Myatt must have received this notice on many occasions over the prior fourteen months, yet, it was not until Ms. Myatt needed to come up with a purportedly legitimate reason for Plaintiff's termination that she addressed this concern with Plaintiff.

41. As for Plaintiff's failure to return materials to Ms. Conway, this was the result of Ms. Conway providing Plaintiff with an incomplete mailing address that resulted in the materials being held at a storage facility and not completely delivered. Due to the Defendant's office size and location in New York City, Plaintiff had to use the office building's designated mailroom to box and ship the materials as per the building's security protocol, and Plaintiff was never notified by the mailroom staff that the materials has been held, or by Ms. Conway that the materials were not successfully delivered, until much later. Again Ms. Myatt did not address this with Plaintiff until the termination meeting, where, in response to Plaintiff's explanation, Ms. Myatt simply said that Plaintiff "could have handled it better" without elaborating.

42. When Plaintiff attempted to address these "concerns" and explained what happened – again this was the first time that Ms. Myatt was raising these concerns with Plaintiff – Mr. Ross, who was on speaker phone, spoke up and said, "We are not here to discuss things,

we are here to terminate your employment." Thus, it is clear that Ms. Myatt and Ms. Ross were not interested in what actually occurred, but were set on terminating Plaintiff's employment.

43. In light of the foregoing, it is clear that the Defendant's proffered "legitimate, nondiscriminatory reasons" for Plaintiff's termination are pre-textual and that Plaintiff's prior complaint about not being paid overtime was the real reason for Defendant's termination of Plaintiff's employment.

**FIRST CAUSE OF ACTION**
**(FLSA: Failure to Pay Overtime Compensation)**

44. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

45. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of the FLSA.

46. As outlined above, Plaintiff was an employee engaged in commerce, as that term is defined by the FLSA and accompanying U.S. Department of Labor Regulations, and met the requirements for individual coverage under the FLSA.

47. As outlined above, Plaintiff was not exempt from the FLSA's overtime requirements.

48. As outlined above, Plaintiff worked in excess of forty hours per workweek and Defendant failed to pay her overtime compensation.

49. Defendant violated the FLSA when it failed to pay Plaintiff overtime compensation for those workweeks where she worked in excess of forty (40) hours.

50. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a) and, as a result, Plaintiff is entitled to liquidated damages.

51. Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (NYLL: Failure to Pay Overtime Compensation)

52. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

53. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of the NYLL.

54. As outlined above, Plaintiff was not exempt from the NYLL's overtime requirements.

55. As outlined above, Plaintiff worked in excess of forty hours per workweek and Defendant failed to pay her overtime compensation.

56. Defendant violated the NYLL when it failed to pay Plaintiff overtime compensation for those workweeks where she worked in excess of forty (40) hours.

57. The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis, within the meaning of NYLL § 198, and as a result Plaintiff is entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

58. Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided by the NYLL.

## THIRD CAUSE OF ACTION
### (FLSA: Retaliation)

59. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

60. As outlined above, Defendant has violated the FLSA by subjecting Plaintiff to unlawful retaliation for engaging in activity protected by the FLSA.

61. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

62. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

63. Defendant's unlawful retaliatory conduct was willful and not in good faith and without reasonable grounds for believing that its conduct was in violation of the FLSA, entitling Plaintiff to an award of punitive damages.

64. Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (NYLL: Retaliation)

65. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

66.     Defendant has violated the NYLL by subjecting Plaintiff to unlawful retaliation for engaging in activity protected by the NYLL.

67.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

68.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

69.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff is entitled to an award of liquidated damages and other relief.

70.     Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided by the NYLL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that an award be issued in her favor containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violated the FLSA and NYLL;

B.      An injunction and order permanently barring Defendant from engaging in further unlawful activities in violation of the FLSA and NYLL;

C.      An award to Plaintiff for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated and punitive damages where appropriate;

  D. An award of actual damages in an amount to be determined at trial plus pre- and post-judgment interest to compensate Plaintiff for all monetary and/or economic harm, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

  E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

  F. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

  G. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 24, 2016

          FILOSA LAW FIRM, PLLC

      By: _____
          Gregory N. Filosa (GF-3862)

          111 John Street, Suite 2510
          New York, NY  10038
          Tel: (212) 256-1780
          Fax: (212) 256-1781
          gfilosa@filosalaw.com

          COUNSEL FOR PLAINTIFF